UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSEPH OQUENDO,

                                         *Plaintiff,*

                  -against-

CITY OF NEW YORK, SGT. VIET W. CAO, In
His Individual And Official Capacities, and
CAPTAIN DANIEL SOSNOWIK, In His Individual
And Official Capacities,

                                             ─────
                                           *Defendants.*
------------------------------------------------------------X

**DOCKET NO.:**

**<u>COMPLAINT</u>**
***Jury trial demanded***

Plaintiff JOSEPH OQUENDO, by and through his attorneys, the LAW OFFICES OF

FREDERICK K. BREWINGTON, against the Defendants, states and alleges as follows:

**<u>PRELIMINARY STATEMENT</u>**

      1.     This is a civil action seeking monetary relief (including past and on going economic

loss), compensatory, special damages and punitive damages, disbursements, costs and fees for

violations of the Plaintiff's rights, brought pursuant to *42 U.S.C.* § 1983 and an award of attorney's

fees/cost pursuant to *42 U.S.C* § 1988.

      2.     Specifically, the Plaintiff alleges that the collective Defendants either directly

misrepresented facts and/or allowed its agent, employee, representative and/or police officer - VIET

CAO - to misrepresent facts concerning Plaintiff OQUENDO, which caused Plaintiff OQUENDO

to suffer violations of his various contractual rights, violations to his Constitutional rights, false

arrest, malicious criminal prosecution, loss (or temporary/partial) of employment status, (or

temporary/partial) loss of title/rank, loss of benefits, loss of pay, loss of personal property, loss of

fringes, unnecessary medical/psychological treatment, (or temporary/partial) prolonged loss of employment, (or temporary/partial) employment opportunities, diminished capacity, criminal and administrative proceedings, special damages, monetary and compensatory damages.

3.      Collective Defendants then negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiff of the terms, conditions and privileges of his employment, through unlawful misrepresentation, misinformation, and character assassination.

4.      Said acts were done expressly, implicitly, knowingly with the consent and condonation of the CITY OF NEW YORK and VIET W. CAO, to the detriment of Plaintiff OQUENDO. Upon discovering violations being committed upon Plaintiff by its officer, employee, Sergeant Defendant VIET W. CAO, Defendant City Of New York failed to correct, discipline, supervise, train/re-train and/or even counsel Defendant CAO and instead ratified Defendant CAO's conduct - as further described below.

## JURISDICTION AND VENUE

5.      The jurisdiction of this Court is invoked under 28 U.S.C. §§1331 and 1343.

6.      Venue herein is proper under 28 U.S.C. § 1391(b); the cause of action arose in the Eastern District of New York, and all of the Parties are employed and/or are located in Brooklyn/Kings County, New York State.

## PARTIES

7.      Plaintiff, Detective JOSEPH OQUENDO (hereinafter "OQUENDO" or "PLAINTIFF"), at all times relevant to this Complaint, is an employee of the CITY OF NEW YORK within the New York City Police Department ("NYPD"). Plaintiff resides in the County of Queens, State of New York. At all times complained of herein, Plaintiff is employed by the New York City

2

Police Department, within the Narcotics Bureau, Borough Of Manhattan South and is a Detective, First-Grade. Plaintiff is a member of the union (in good standing) and is a direct beneficiary of the collective bargaining agreement formed between the Union and the CITY OF NEW YORK'S Police Department.

8.      During all times relevant in this Complaint the Defendant, CITY OF NEW YORK (hereinafter "CITY") is a duly constituted Municipal Corporation of the State of New York. Upon information and belief, the CITY oversees, maintains, manages/supervises, and controls several departments and employees - including but not limited the New York City Police Department and the Individual Defendant VIET W. CAO herein.

9.      During all times mentioned in this Complaint, Defendant VIET W. CAO (hereinafter "CAO" OR "Defendant CAO")  is an employee of the Defendant CITY OF NEW YORK and is a police officer (Shield No. 1925), with the rank of Sergeant, within the New York City Police Department (NYPD). Upon information and belief, Defendant CAO is assigned to the 72 Precinct in Brooklyn, New York and has been an officer with NYPD for approximately twelve (12) years. Defendant CAO is being sued in his individual and official capacities.

10.     During all times mentioned in this Complaint, Defendant CAPTAIN DANIEL SOSNOWIK (hereinafter "SOSNOWIK" OR "Defendant SOSNOWIK"), sued here in his official capacity, is an employee of the Defendant CITY OF NEW YORK and is a police officer/policy-maker, with the rank of Captain, within the New York City Police Department (NYPD). Upon information and belief, Defendant SOSNOWIK is assigned to Patrol Borough Brooklyn South.

3

## FACTUAL ALLEGATIONS

11.     On May 1, 2011 at approximately 6:00 a.m. Plaintiff Detective OQUENDO was arrested and charged with the criminal offense of Driving While Intoxicated ("DWI"), while operating his vehicle in or around 56th Street and 2nd Avenue in Brooklyn, New York.

12.     The arresting officer, and/or the officer that arrested and charged Plaintiff with DWI was Defendant Sergeant VIET CAO.

13.     On the morning of May 1, 2011, Plaintiff OQUENDO was driving his vehicle in Brooklyn and was returning from a family function that took place in Staten Island.

14.     Plaintiff OQUENDO was not intoxicated and/or was not operating his vehicle in an impaired condition. In fact, because Plaintiff OQUENDO was not intoxicated, he became a designated driver with respect to others who attended the same function.

15.     Plaintiff OQUENDO offered to give an acquaintance a ride home from the function in Staten Island on Plaintiff's way home in Queens. This acquaintance resided in Brooklyn. During this ride home, Plaintiff's acquaintance had a can of beer on his person, which he took out and placed in the passenger-seat cup holder, located on the passenger side of Plaintiff's vehicle.

16.     Plaintiff OQUENDO did not touch, handle, or drink from the can of beer that was placed in the passenger side cup holder.

17.     Plaintiff safely dropped his acquaintance home in Brooklyn and intended to proceed to his own home in Queens. At that time, Plaintiff's acquaintance left the can of beer in Plaintiff's vehicle - which Plaintiff intended to discard once he returned to his residence.

18.     At no time before, during or after Plaintiff's friend exited the vehicle did Plaintiff touch, handle, or drink from the can of beer that was placed in his passenger side cup holder.

4

19.     While stopped at a red light  in or around 56th Street and 2nd Avenue in Brooklyn, Plaintiff OQUENDO fell asleep in his car. Plaintiff sat upright in his vehicle, had his hands on the steering wheel, and his foot was applied to the brakes of the vehicle.

20.     The vehicle stood stationary and did not move during this time.

21.     A few moments later, Plaintiff was awakened by the sound of knocking on the window of his car. While Plaintiff was asleep inside his vehicle, his car was approached by Defendant VIET W. CAO, who was on duty and was patrolling the area.

22.     Upon information and belief, Defendant CAO, along with two other uniformed police officers, saw Plaintiff asleep in his car and knocked on Plaintiff's window to investigate.

23.     Upon being awoken by the knocking of Defendant CAO, Plaintiff immediately and calmly opened his car window to speak with Defendant CAO. At that time, Plaintiff also immediately identified himself as a member of the New York City Police Department.

24.     In addition, in response to a request made by Defendant CAO and/or other officers present with Defendant CAO, Plaintiff produced his identification, including but not limited to his police/detective identification.

25.     Plaintiff was articulate, possessed all of his motor-skills, and was not slurring his words or exhibiting any other signs of intoxication/impairment.

26.     At that time, after producing his identification, Defendant CAO abrasively ordered Plaintiff to step out of the vehicle. Plaintiff complied with Defendant CAO's orders and exited his car.

27.     Plaintiff, being sober, exited his vehicle in a controlled, steady and unwavering manner. At no time did Plaintiff exhibit any signs of intoxication and/or being under the influence

of any substances.

28.     Plaintiff stood steady on his feet for several minutes thereafter and continued to answer the questions being asked by Defendant CAO, while other police officers stood by and observed. Plaintiff did not slur his words or exhibit any other signs of intoxication/impairment.

29.     At that time, Defendant CAO began to accuse Plaintiff of Driving while intoxicated.

30.     Plaintiff adamantly denied the allegations of Defendant CAO and continually advised Defendant CAO that he was not intoxicated.  Nevertheless, Defendant CAO continued to accuse Plaintiff of DWI, while making references to the beer can in Plaintiff's vehicle.

31.     Plaintiff advised Defendant CAO that the beer can came from the friend, whom Plaintiff OQUENDO dropped off a few minutes prior. Plaintiff also told Defendant CAO, on several occasions, that Defendant CAO should/could secure the beer can and check same for fingerprints and/or DNA evidence. Plaintiff advised Defendant CAO that said tests would prove that Plaintiff never touched or drank from the beer can found in his vehicle.

32.     Defendant CAO unreasonably ignored Plaintiff's statements and suggestions, failed to take control of the beer can, and continued to question/accuse Plaintiff of driving while intoxicated.

33.     Being clearly aware that the beer can itself was in fact, and/or could serve as exculpatory evidence that would have vindicated Plaintiff and/or proved that Plaintiff was not drinking, Defendant CAO unreasonably disregarded the evidence (and the requests made by Plaintiff to hold, inventory, and test said evidence) and continued to berate Plaintiff.

34.      Defendant CAO unreasonably and intentionally disregarded his duties, as an arresting officer, to preserve and inventory said evidence in furtherance of a criminal prosecution.

35.     Defendant CAO unreasonably and intentionally disregarded his duties, and obligations to maintain exculpatory evidence that would tend to exonerate an accused (in this case Plaintiff Oquendo) of criminal wrongdoing.

36.     After interviewing Plaintiff for several minutes outside of Plaintiff's vehicle, Defendant CAO ordered other uniformed officers on the scene to place Plaintiff under arrest and to take Plaintiff into police custody for "*having an open container*" in his vehicle. During this process, Defendant CAO referred to Plaintiff in derogatory ways, such as, but not limited to "perp."

37.      Plaintiff OQUENDO questioned Defendant CAO's decision to place him under arrest for having an "open container," because having an open container is regarded as a violation in New York State, wherein the accused is usually given an appearance ticket and released at the scene. Defendant CAO's stated-intention to seize and deprive Plaintiff of his freedom for having an open container was inconsistent with the normal practice of the New York City Police Department.

38.     Nevertheless, Defendant CAO insisted that Plaintiff be taken into custody. Defendant CAO had no probable cause to arrest Plaintiff for DWI. Defendant CAO had no probable cause to charge or to initiate and continue a prosecution against Plaintiff for DWI.

39.     Plaintiff was placed in a police car and transported to the 72nd Precinct in Brooklyn. Meanwhile, Defendant CAO ordered the other officers on the scene to take control of Plaintiff's vehicle and have same impounded.

40.     When Plaintiff arrived at the 72nd Precinct, Plaintiff was placed in handcuffs and advised that he was being held for arrest processing. At this point, Plaintiff asked Defendant CAO to speak to his union delegate, and/or a legal union representative, to inform the union of his arrest.

41.     Defendant CAO unreasonably denied Plaintiff's request to speak to his legal

7

representative outright.

42.     Defendant CAO unreasonably violated Plaintiff's 6th Amendment right to counsel, as well as Plaintiff's contractual rights to confer with a union delegate when being arrested.

43.     At all times, Defendant CAO, a police Sergeant, patrol supervisor, union member, and otherwise an experienced police officer was well aware of Plaintiff OQUENDO's right to counsel and right to a union delegate under the circumstances.

44.     Defendant CAO ignored his training, experience, and knowledge of the collective bargaining agreement, knowledge of the criminal procedure law, knowledge of the New York State and U.S. Constitutions, as well as the policies, procedures of the New York City Police Department when he outright denied Plaintiff's right to confer with counsel and union representatives.

45.     Defendant CAO's animus, malice toward, an disregard for the secured rights of Plaintiff OQUENDO was clear.

46.     While in the 72nd Precinct, Defendant CAO ordered other officers to transport Plaintiff from the 72nd Precinct to the 78th Precinct to undergo field sobriety testing and well and Breathalyzer tests. Upon information and belief, Defendant CAO responded to the 78th precinct as well.

47.     Plaintiff continually asked to speak to his union representative and/or legal counsel and all request were summarily denied in continued violation of Plaintiff's rights.

48.     As Plaintiff asked to speak to his union rep and/or legal representative again while at the 78th Precinct, Defendant CAO continued to ignore the request. He then placed Plaintiff in front of a video camera that was located inside a DWI testing room.

49.     Plaintiff was provided with a phone to call his union representative. When Plaintiff

called, Plaintiff could not get in contact with his union representative. Instead, Plaintiff left a message with his representative.

50.     At this time, Defendant SOSNOWIK was present in the DWI testing room.

51.     Defendant SOSNOWIK instructed another officer to take the phone away from Plaintiff and then instructed Plaintiff to take the breathalyser test once again.

52.     Plaintiff requested that he be able to wait to see if his union representative would call him back first. However, Plaintiff agreed to go forward with DWI testing and voluntarily began taking standard field sobriety tests ("SFST") in the meantime while he waited.

53.     Plaintiff completed a series of SFSTs in front of Defendants and passed all of the tests without issue.

54.     While Plaintiff was performing SFSTs for Defendants, Plaintiff's union delegate called Plaintiff at the precinct.

55.     Defendant SOSNOWIK knew and was fully aware that Plaintiff's union delegate was on the phone and was requesting to speak to Plaintiff. Defendant SOSNOWIK outright refused to allow Plaintiff to speak to his representative(s).

56.     Nothing prevented Defendant SOSNOWIK from allowing Plaintiff to speak with his union/legal representative(s). Defendant SOSNOWIK, knowing that Plaintiff requested to speak to his lawyer and union representative, and knowing that Plaintiff's union/legal representative was attempting to contact Plaintiff, had a legal and contractual duty to allow Plaintiff reasonable opportunity to allow Plaintiff to speak with same.

57.     However, Defendants SOSNOWIK and CAO, with full knowledge that Plaintiff's representative were requesting to speak to Plaintiff, ignored their training, experience, and

9

knowledge of the collective bargaining agreement, knowledge of the criminal procedure law, knowledge of the New York State and U.S. Constitutions, as well as the policies, procedures of the New York City Police Department and outright denied Plaintiff his right to confer with counsel and union representatives.

58.     Then, to add further insult to injury, though Plaintiff completed and passed all SFSTs administered to him, Collective Defendants falsely claimed that Plaintiff "refused" to complete sobriety testing.

59.     Defendants falsely indicated that Plaintiff "refused" to take DWI tests, knowing that said false allegation would subject Plaintiff to further criminal and disciplinary charges.

60.     At no time did Plaintiff refuse to take SFSTs. Defendant were aware that their allegation was untrue. Defendants - also being members of the NYPD - were fully aware that their allegations would further criminal and disciplinary consequences on Plaintiff.

61.     Plaintiff was then taken back to the 72nd Precinct for processing.

62.     When Plaintiff returned to the 72nd Precinct, within two hours of his arrest, Plaintiff learned that Defendant CAO had already contacted Internal Affairs, as well as other supervisors within the NYPD and informed them of Plaintiff's arrest and charges for DWI.

63.     Defendant CAO also advised Internal Affairs and other supervisors that Plaintiff was unfit for duty. Defendant CAO recommended that Plaintiff's weapons and credentials be immediately seized and that Plaintiff be subjected to disciplinary proceedings.

64.     Defendant CAO provided Internal Affairs and other supervisors with false reasons as to  why he believed that Plaintiff was unfit for duty.

65.     To support his unreasonable claim that Plaintiff was unfit for duty, Defendant CAO

falsely told Internal Affairs that he approached Plaintiff's vehicle while in the street at the arrest scene and he observed Plaintiff "slumped over" and or "hunched over" the steering wheel.

66.     Defendant CAO knew that these allegations were false, but said this to make sure that Plaintiff would be subject to ridicule, undergo serious disciplinary charges, criminal process, as well as suffer losses of his employment, rank, and status within the NYPD.

67.     To support his unreasonable claim that Plaintiff was unfit for duty and should be criminally charged with DWI, Defendant CAO falsely told Internal Affairs that he observed the beer can "in the center console," of the vehicle within Plaintiff's reach.

68.     However, Defendant CAO was aware that the beer can was not within Plaintiff's reach in the center console - and was actually on the passenger side door cup holder. Defendant CAO falsely claimed that the beer can was near Plaintiff to manufacture evidence in support of his false claims, arrest, and prosecution against Plaintiff.

69.     To support his unreasonable claim that Plaintiff was unfit for duty and should be criminally charged with DWI, Defendant CAO falsely told Internal Affairs that Plaintiff remained asleep in the vehicle while Defendant CAO knocked on his window for approximately 45 minutes while trying to wake Plaintiff up.  Defendant CAO also knew that his allegations were false, but said this to make sure that Plaintiff would be subject to ridicule, undergo serious disciplinary charges, criminal process,  as well as suffer losses of his employment, rank, and status within the NYPD.

70.     To support his unreasonable claim that Plaintiff was unfit for duty and should be criminally charged with DWI, Defendant CAO falsely told Internal Affairs that when Plaintiff woke up in response to Defendant CAO's knocking, Plaintiff was disoriented and appeared to be intoxicated. Defendant CAO also knew that these allegations were false, but said this to make sure

that Plaintiff would be subject to ridicule, undergo serious disciplinary charges, criminal process, as well as suffer losses of his employment, rank, and status within the NYPD.

71.     To support his unreasonable claim that Plaintiff was unfit for duty and should be criminally charged with DWI, Defendant CAO falsely told Internal Affairs that - after Plaintiff woke up - it took several minutes for Plaintiff to wake up and comply with CAO's commands to open the window. Defendant CAO also knew that these allegations were false, but said this to make sure that Plaintiff would be subject to ridicule,  undergo serious disciplinary charges, criminal process, as well as suffer losses of his employment, rank, and status within the NYPD.

72.     To support his unreasonable claim that Plaintiff was unfit for duty and should be criminally charged with DWI, Defendant CAO falsely told Internal Affairs that Plaintiff staggered out of his vehicle and had to brace himself against the car for support. Defendant CAO also knew that these allegations were false, but said this to make sure that Plaintiff would be subject to ridicule, undergo serious disciplinary charges, criminal process, as well as suffer losses of his employment, rank, and status within the NYPD.

73.     To support his unreasonable claim that Plaintiff was unfit for duty and should be criminally charged with DWI, Defendant CAO falsely told Internal Affairs that Plaintiff smelled of alcohol on his breath and on his clothing. Defendant CAO also knew that these allegations were false, but said this to make sure that Plaintiff would be subject to ridicule, undergo serious disciplinary charges, as well as suffer losses of his employment, rank, and status within the NYPD.

74.     To support his unreasonable claim that Plaintiff was unfit for duty and should be criminally charged with DWI, Defendant CAO falsely told Internal Affairs that Plaintiff had glassy, bloodshot eyes and slurred speech. Defendant CAO also knew that these allegations were false, but

said this to make sure that Plaintiff would be subject to ridicule, undergo serious disciplinary charges, as well as suffer losses of his employment, rank, and status within the NYPD.

75.     To support his unreasonable claim that Plaintiff was unfit for duty and should be criminally charged with DWI, Defendant CAO falsely told Internal Affairs that Plaintiff was unbalanced at the scene of the arrest. Defendant CAO also knew that these allegations were false, but said this to make sure that Plaintiff would be subject to ridicule, undergo serious disciplinary charges, as well as suffer losses of his employment, rank, and status within the NYPD.

76.     To support his unreasonable claim that Plaintiff was unfit for duty and should be criminally charged with DWI, Defendant CAO falsely told Internal Affairs that Defendant CAO had to remove Plaintiff's service weapon from Plaintiff "at the scene of the arrest" because of the alleged condition that Plaintiff was in. Defendant CAO also knew that these allegations were false, but said this to make sure that Plaintiff would be subject to ridicule, undergo serious disciplinary charges, as well as suffer losses of his employment, rank, and status within the NYPD.

77.     At the time, Defendant CAO was fully aware that the only thing that he saw was an open container in Plaintiff's car at the scene and that Plaintiff exhibited no signs of intoxication. So, Defendant CAO manufactured false evidence (testimony) against Plaintiff in an effort to make sure that Plaintiff would be arrested, charges criminally, and disciplined.

78.     Further, in addition to falsely claiming that Plaintiff refused to take the Breathalyzer test, Defendant SOSNOWIK falsely alleged that Plaintiff had a "faint odor of alcohol on his breath." But, while Plaintiff was at the 72nd Precinct, Defendant SOSNOWIK never came close enough to Plaintiff to smell whether Plaintiff smelled of alcohol.

79.     At no time did Defendant SOSNOWIK smell alcohol on Plaintiff's breath or body,

nor did Defendant SOSNOWIK smell alcohol emanating from Plaintiff.

80.     In furtherance of his effort to cause Plaintiff disciplinary harm and to cause Plaintiff to be deemed unfit for duty, Defendant SOSNOWIK falsely claimed that Plaintiff smelled like alcohol.

81.     At all times, Defendant CAO knew that Plaintiff OQUENDO was not intoxicated.

82.     At all times, Defendant CAO was knew that Plaintiff OQUENDO exhibited no signs of intoxication and was not impaired.

83.     At all times, Defendant CAO was knew that his false allegations against Plaintiff OQUENDO would have immediate and serious negative consequences to Plaintiff's well-being, status, employment, and freedom.

84.     At all times, Defendant CAO knew that his false allegations against Plaintiff OQUENDO would cause embarrassment and ridicule to Plaintiff in the public at large and among his peers in the NYPD.

85.     Defendant CAO intentionally and recklessly ignored the probable aftermath of his false and malicious actions against Plaintiff and unreasonably leveled false allegations against Plaintiff in an effort to make sure that Plaintiff would suffer adverse consequences.

86.     In direct response to the false and malicious allegations made by Defendant CAO, Plaintiff was immediately suspended, arrested and charged with crimes, prosecuted, had his license to operate a motor vehicle suspended or revoked, and had his weapons/privileges confiscated.

87.     As a direct response to Defendant CAO's false and malicious allegations against Plaintiff, Plaintiff was placed on administrative desk duty.

88.     In direct response to the false and malicious allegations made by Defendant CAO,

14

Plaintiff's status and position as a union delegate was suspended.

89.     As a direct result of the false and malicious allegations made by Defendant CAO, Plaintiff was suspended from his command and station and transferred to a different precinct, where he remained on desk duty for over two (2) years.

90.     As a direct result of the false and malicious allegations made by Defendant CAO, Plaintiff was forced - against his will - to enter into an inpatient treatment program from substance abusers. In this regard, Plaintiff was forced to travel to Pennsylvania for 30 days and admit himself into an intensive drug and alcohol treatment program.

91.     As a direct result of the false and malicious allegations made by Defendant CAO against Plaintiff, IAB opened up an investigation against Plaintiff and filed disciplinary charges against Plaintiff. Plaintiff was forced to defend himself from false criminal and administrative charges for over two years.

92.     The other uniformed police officers that were at the scene of the arrest of Plaintiff did not support or confirm the false allegations of Defendant CAO. Indeed, their recitations of the facts were materially different.

93.     Because Defendant CAO is a Sergeant and a patrol supervisor, The New York City Police Department and/or Defendant CITY OF NEW YORK gave Defendant CAO's false allegations were given more credence than the other police officers that were at the scene of the arrest.

94.     The New York City Police Department and/or Defendant CITY OF NEW YORK turned a blind eye to the fact that Defendant CAO's account was materially different than other police officers on the scene, and instead, blindly adopted, and condoned those claims and continued

15

with the disciplinary charges against Plaintiff.

95.     The New York City Police Department and/or Defendant CITY OF NEW YORK ignored Plaintiff's claim that Defendant CAO took possession of the beer can, which could be tested to prove that Plaintiff never touched, or drank from, the open container of beer, and instead, blindly adopted, and condoned those claims and continued with the disciplinary charges against Plaintiff.

96.     The New York City Police Department and/or Defendant CITY OF NEW YORK ignored Plaintiff's claim that Defendants CAO and SOSNOWIK refused to allow Plaintiff to speak with his union and/or legal representative, and instead, blindly adopted, and condoned those claims and continued with the disciplinary charges against Plaintiff.

97.     The New York City Police Department and/or Defendant CITY OF NEW YORK ignored video evidence from the 78th precinct which showed that Plaintiff was not impaired or intoxicated, and instead, blindly adopted, and condoned those claims and continued with the disciplinary charges against Plaintiff.

98.     The existence of a surveillance video served to prove that Defendant CAO was incorrect and/or was misrepresenting the facts about the circumstances of his arrest of Plaintiff.

99.     Upon information and belief, The New York City Police Department and/or Defendant CITY OF NEW YORK was in immediate possession of this surveillance video footage soon after Plaintiff's arrest.

100.    Upon information and belief, the video surveillance footage conclusively demonstrated that Defendant CAO's recitation of the events on May 1, 2011 were false and/or grossly exaggerated - to the detriment of Plaintiff OQUENDO.

101.    Although the New York City Police Department and/or Defendant CITY OF NEW

16

YORK knew of the surveillance video, viewed same, and had said video (along with the DWI testing video) in its possession soon after the date of Plaintiff's arrest, Defendant CITY did not question Defendant CAO regarding his false and exaggerated statements against Plaintiff.  Instead they condoned his actions and adopted his behavior - to the detriment of Plaintiff.

102.    Although the New York City Police Department and/or Defendant CITY OF NEW YORK knew of the surveillance video, viewed same, and had said video (along with the DWI testing video) in its possession soon after the date of Plaintiff's arrest, Defendant CITY did not cease the wrongful prosecution against Plaintiff.

103.    Although the New York City Police Department and/or Defendant CITY OF NEW YORK knew of the surveillance video, viewed same, and had said video (along with the DWI testing video) in its possession soon after the date of Plaintiff's arrest, Defendant CITY did not cease the administrative/disciplinary charges against Plaintiff.

104.    Although the New York City Police Department and/or Defendant CITY OF NEW YORK knew of the surveillance video, viewed same, and had said video (along with the DWI testing video) in its possession soon after the date of Plaintiff's arrest, Defendant CITY did not discipline, counsel, warn, or retrain Defendant CAO for his false statements against Plaintiff.

105.    Although the New York City Police Department and/or Defendant CITY OF NEW YORK knew of the surveillance video, viewed same, and had said video (along with the DWI testing video) in its possession soon after the date of Plaintiff's arrest, Defendant CITY did not discipline Defendant CAO for his false statements against Plaintiff.

106.    No action(s) whatsoever were taken by the New York City Police Department and/or Defendant CITY OF NEW YORK against Defendant CAO for his knowingly, reckless and

17

intentional false allegations against Plaintiff.

107.    Had it not been for the surveillance video proving that Defendant CAO misrepresented the facts, Plaintiff could have been convicted for DWI.

108.    Had it not been for the surveillance video proving that Defendant CAO manufactured evidence and misrepresented the facts, Plaintiff could have been subjected to further disciplinary action, including but not limited to termination and/or demotion.

109.    But for the existence of the surveillance video, the facts concerning the criminal prosecution, as well as the administrative charges against Plaintiff, would have been based upon Defendant CAO's word versus Plaintiff's word. But, Plaintiff, as the accused, would have been at a disadvantage in both proceedings.

110.    Plaintiff stated and maintained his innocense through both the criminal proceeding and the administrative proceeding.

111.    During the criminal proceeding, Defendant CAO continued his false allegations against Plaintiff and even appeared at a refusal hearing at the Department Of Motor Vehicles (wherein Plaintiff's driving privileges were at risk of being immediately revoked) and testified as to the same false allegations against Plaintiff.

112.    Defendant CAO supported and helped to further the suspension of Plaintiff's driving privileges with the Department of Motor Vehicles and the prosecution in the criminal courts.

113.    As a result of Defendant CAO's false and malicious actions against Plaintiff, Plaintiff's driver's license was wrongfully suspended, Plaintiff's authority and licenses to carry firearms were suspended, Plaintiff was suspended from his duties as Detective in the NYPD, Plaintiff's privileges as an NYPD Detective were stripped, Plaintiff was removed from his command,

Plaintiff lost pay and benefits, Plaintiff's position as a union delegate was lost, Plaintiff was forced

to go to unnecessary inpatient treatment as a condition of keeping his employment, Plaintiff's car

remained impounded, and Plaintiff was mis-labeled as a criminal Defendant, among other things.

114.    As a result of Defendant CAO's false and malicious actions against Plaintiff,

Plaintiff sustained considerable economic hardship and sustained monetary damages, loss of status,

loss of benefits, special damages (including attorneys fee's and driving suspension fees/costs).

115.    To add further insult to Plaintiff's injuries, Defendant CAO never tested, or ordered

tests on, the alleged open container found in Plaintiff's vehicle. This can was never examined for

evidence.

116.    In fact, the alleged open container was not maintained or secured as part of the

criminal prosecution of Plaintiff and, upon information and belief, Defendant CAO intentionally

destroy and/or discarded the container and its contents prior to Plaintiff's criminal trial.

117.    Defendant CAO, knowing that Plaintiff advised him that the can was exculpatory

evidence from the outset, intentionally destroyed and/or discarded this evidence to cause further

harm to Plaintiff.

118.    Further, Defendant CITY OF NEW YORK and/or the New York City Police

Department never questioned Defendant CAO as to why this crucial evidence was not secured,

maintained or tested/examined.

119.    No action was taken against Defendant CAO for failing/refusing  in his duties as an

arresting officer (and supervisor/Patrol Sergeant) to maintain or secure this exculpatory evidence.

Instead, the administrative charges against Plaintiff were blindly continued.

120.    On April 9, 2013, Plaintiff was acquitted of the criminal charges pending in Kings

County Criminal Court after a full trial in the matter of <u>People v. Oquendo</u> (Docket No. 2011KN034142). That criminal matter against Plaintiff remained pending for two years.

121.    During the pendency of the criminal matter for two years, Plaintiff remained on administrative leave from his Detective position and was kept on desk-duty.

122.    During the pendency of the criminal matter for two years, Plaintiff continued to sustain economic and compensatory damages, including loss of pay, loss benefits, loss of title/rank, economic damages, impound costs/fees, attorney's fees/costs, property damage, damage to his vehicle, and other damages/injuries.

123.    Even after Plaintiff was acquitted in the criminal matter, and with knowledge that Defendant CAO misrepresented critical facts against Plaintiff, Defendant CITY OF NEW YORK and the New York City Police Department maintained administrative charges against Plaintiff for many months afterwards - to the continued detriment of Plaintiff OQUENDO.

124.    After Plaintiff was acquitted during the criminal matter, the Defendant CITY OF NEW YORK and/or the New York City Police Department refused to return Plaintiff to full duty for months and refused to return Plaintiff to his command in the Narcotics Division - wherein Plaintiff was assigned for his entire tenure as a Detective.

125.    In the year 2014, months after Plaintiff's acquittal of the criminal charges, Plaintiff's firearms and credentials were returned, but Plaintiff was told that he would be transferred out of Narcotics Division. Plaintiff was summarily reassigned to the 113th Precinct without explanation.

126.    Plaintiff was summarily transferred out of the Narcotics Division due to the false allegations made against him by Defendants CAO and SOSNOWIK. Defendant CITY OF NEW YORK utilized the false allegations against Plaintiff to strip Plaintiff of his command, even though

the Defendant CITY knew that said allegations were false.

127.   At the time that Plaintiff was summarily transferred out of the Narcotics Division, wherein Plaintiff worked for decades and had a stellar work-performance history prior to his (false) arrest, Plaintiff's disciplinary charges were not adjudicated and there were no administrative findings of wrongdoing by Plaintiff.

128.   The summary transfer of Plaintiff out of the Narcotics Division lacked any reasonable basis or business justification. Further, to date, no reason has been given to Plaintiff for his transfer.

129.   Defendant CITY, through its agents, employees, officers and representatives retaliated against Plaintiff for prevailing in the criminal matter and for proving that Defendants' CAO's and SOSNOWIK's allegations were false and malicious.

130.   Defendant CITY, through its agents, employees, officers and representatives retaliated against Plaintiff for proving that Defendant CAO's and SOSNOWIK's false allegations were unreasonable and lacked basis in fact.

131.   Defendant CITY, through its agents, employees, officers and representatives retaliated against Plaintiff to demonstrate their ratification and support for the malicious conduct of Defendants CAO and SOSNOWIK against Plaintiff.

132.   Upon information and belief, Defendant CAO routinely made false statements of criminal wrongdoing against others - including Plaintiff.

133.   Upon information and belief, Defendant CITY OF NEW YORK and the New York City Police Department knew and/or should have known, that Defendant CAO made false statements of criminal wrongdoing against others - including Plaintiff - while acting within his official duties and under color of law as a police officer with the New York City Police Department.

21

134.     Upon information and belief multiple complaints regarding misconduct were made against Defendant CAO by civilians within the areas that he patrolled.

135.     Upon information and belief, despite their knowledge of Defendant CAO's history, the Defendant CITY OF NEW YORK and the New York City Police Department failed to discipline, supervise, train, and/or retrain Defendant CAO with respect to his continued wrongful conduct.

136.     Defendant CITY OF NEW YORK and the New York City Police Department ratified and/or condoned the actions of Sergeant Defendant CAO and allowed him to continue in his supervisory role within the NYPD despite his conduct.

137.     As a direct result of the combined actions of Collective Defendants with regard to Plaintiff OQUENDO, Plaintiff sustained and continues to sustain damages/injuries, including but not limited to loss of driving privileges, loss of licenses to carry firearms, loss of title/rank/status, removal from his command, loss of liberty, stigmatization, lost pay and benefits, lost union responsibilities, unnecessary inpatient treatment, humiliation, impound fees, loss of use of vehicle, labeling as a criminal Defendant, diminished quality of life, incidental fees/damages, loss of pay, loss benefits, special damages, economic damages, impound costs/fees, attorney's fees/costs, property damage, damage to his vehicle, and other damages/injuries.

## AS AND FOR COUNT ONE
### 42 U.S.C. §1983

138.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 137 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

139.     The Individual Defendants are liable herein for False Arrest and/or Unlawful Imprisonment (Defendant CAO); Malicious Prosecution (Defendants CAO and SOSNOWIK); and Abuse of Criminal Process (Defendants CAO and SOSNOWIK) against Plaintiff. Individual Defendants

herein are also liable for unreasonably infringing upon the property and contractual and constitutional rights of Plaintiff, secured by Plaintiff as a public employee and member of union with collective bargaining rights.

140.    The Defendants, CITY OF NEW YORK, VIET W. CAO and CAPTAIN DANIEL SOSNOWIK, acting under color of law, collectively and each one of them individually, have engaged in actions and abuses which violated and denied Plaintiff his rights as provided under the Fourteenth Amendment, Fourth Amendment, and Sixth Amendment of the United States Constitution, violating his Fourteenth Amendment rights to due process as well as his substantive due process right to bodily integrity, right against unreasonable search and seizure, and right to property (i.e. employment and benefits).

141.    The Defendants, CITY OF NEW YORK, VIET W. CAO and CAPTAIN DANIEL SOSNOWIK, collectively and each one of them individually, violated Plaintiff's various contractual rights under the collective bargaining agreement, while acting under the color of law.

142.    Individual Defendant VIET W. CAO subjected Plaintiff to false criminal arrest and/or unlawful imprisonment in violation of *42 USC* § 1983. At all times, Plaintiff was placed under arrest and falsely charged with DWI knowing that they had information (and evidence) immediately accessible to them that would have negated probable cause of criminal wrongdoing against Plaintiff. Defendant intentionally turned a blind-eye to this available exculpatory evidence and arrested Plaintiff without warrant or cause.

143.    Individual Defendant VIET CAO subjected Plaintiff to malicious criminal prosecution and abuse of process in violation of *42 USC* § 1983. At all times, Defendant CAO was aware of the existence of evidence that proved that Plaintiff was not operating a vehicle while under the influence. Defendant CAO ignored this evidence, took control of the evidence, failed in his duties to maintain said

evidence and intentionally destroyed said evidence to prevent Plaintiff from defending himself during a criminal prosecution wrongfully initiated by Defendant CAO.

144.    Defendant VIET CAO, acting outside of the scope of his official authority, contrary to the various Constitutional and contractual rights secured by Plaintiff, and acting with malicious intent, misrepresented facts concerning Plaintiffs physical condition in order to justify and continue his false arrest and malicious, abusive criminal process against Plaintiff.

145.    Defendant VIET CAO, acting outside of the scope of his official authority, contrary to the various Constitutional and contractual rights secured by Plaintiff, and acting with malicious intent, misrepresented facts concerning Plaintiffs physical condition, and labeled Plaintiff as "unfit for duty," in order to initiate and support a wrongful disciplinary process against Plaintiff.

146.    Defendant CAPTAIN DANIEL SOSNOWIK knew that he was misrepresenting the facts when he falsely accused Plaintiff of refusing to take DWI tests. Further, Defendant SOSNOWIK was aware that his false allegations would lead to further criminal and administrative charges against Plaintiff. Defendant SOSNOWIK ignored these probable adverse consequences to Plaintiff.

147.    Both Defendants CAO and SOSNOWIK, as trained police officers, and as members of police officer's unions, were both well-aware that they were violating Plaintiff's 6th Amendment Right(s) to counsel (among other things), Plaintiff's 14th Amendment rights, 4th Amendment Rights, Plaintiff's secured substantive and procedural due process rights, as well as Plaintiff's contractual and collective bargaining rights.

148.    At all times, Defendant VIET CAO and CAPTAIN DANIEL SOSNOWIK knew and or should have known that their malicious actions and false statements against Plaintiff would lead to disciplinary and criminal action(s) against Plaintiff.

149.    Collective Defendants' actions have caused the Plaintiff to suffer and has resulted in diminishing his employment, damage to Plaintiff's substantive due process rights, loss of the ability to

advance in his employment, damage to Plaintiff's well-being, damage to Plaintiff's reputation and good standing in his employment.

150.    Each Named Defendant knew that their respective actions were in violation of Plaintiff's rights which they knew or should have known were unreasonable, unlawful, and a breach of Plaintiff's rights under a standing collective bargaining agreement.

151.    None of the Defendants took action to prevent the wrongful actions taken against Plaintiff to cause his employment to be wrongfully diminished and to cause false criminal proceeding to continue against Plaintiff.

152.    Defendants acquiesced and contributed to the continuation of the violations of Plaintiff's rights in failing to take action as to prevent and expose said violative actions being taken against Plaintiff. Defendants each took affirmative steps in furtherance of their plan to harm Plaintiff's personal and professional standings.

153.    Defendants, collectively and individually, were motivated by their own personal interests with respect to their individual efforts against Plaintiff. Collectively, the individual Defendants' actions were contrary to the Defendant CITY's stated policies, procedures, rules and regulations.

154.    Each of the Defendants condoned the wrongful, grossly negligent, reckless, careless and intentional acts taken as set out herein and each had an affirmative responsibility to prevent, expose and reverse said wrongful, grossly negligent, reckless, careless and intentional acts but instead furthered and condoned said wrongful acts.

155.    Collective Defendants - acting under color of law - were each aware that their actions would cause causing serious problems to Plaintiff's personal and professional well-being. Yet the Defendants did nothing to cease their wrongful practices against Plaintiff.

156.    As a direct result of the combined actions of Collective Defendants with regard to Plaintiff OQUENDO, Plaintiff sustained and continues to sustain damages/injuries, including but

not limited to loss of driving privileges, humiliation, loss of licenses to carry firearms, loss of

title/rank/status, removal from his command, loss of liberty, stigmatization, lost pay and benefits,

lost union responsibilities, unnecessary inpatient treatment, impound fees, loss of use of vehicle,

labeling as a criminal Defendant, diminished quality of life, incidental fees/damages, loss of pay, loss

benefits, special damages, economic damages, impound costs/fees, attorney's fees/costs, property

damage, damage to his vehicle, and other damages/injuries.

157.    Plaintiff suffered and is entitled to, damages sustained to date and continuing in excess

of one million dollars ($1,000,000.00), as well as punitive damages, costs and attorneys fees pursuant

*42 U.S.C.* §1988.

## AS AND FOR COUNT TWO
## 42 U.S.C. § 1983 MUNICIPAL LIABILITY

158.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs 1 through 157 of this Complaint with the same force and effect as though fully set forth

herein.

159.    In actively inflicting and failing to prevent the above stated abuses incurred by

Plaintiff, the Defendants acted unreasonably, recklessly, and grossly negligent in failing to exercise

the slightest amount of due care to secure and protect the civil and constitutional rights of the

Plaintiff against illegal search and seizure, physical abuse, detained custody and other due process

violations. Said rights guaranteed to the plaintiff by *42 U.S.C.* § 1983 and by the Fourth, Fifth, and

Fourteenth Amendment of the United States Constitution.

160.    The Municipal Defendant CITY OF NEW YORK, which governs, controls, operates,

manages, supervises, and created the NEW YORK CITY POLICE DEPARTMENT has permitted,

tolerated and encouraged a pattern and practice of unjustified, unreasonable and illegal abuses,  false

arrest, false imprisonment, false prosecutions of persons by its police officers, detectives, and law enforcement agents.

161.    Although such police conduct are improper, said incidents are routinely covered up by the CITY OF NEW YORK, its agents, employees and servants by official claims that the officers' use of excessive force, harassments, false arrests, malicious prosecutions, and false imprisonments were justified and proper, or by leveling false charges against the persons so falsely charged, so as to insulate the offending police officers and other officials.

162.    Said charges and official claims have been fully backed by the CITY OF NEW YORK and the NEW YORK CITY POLICE DEPARTMENT, which has repeatedly and unreasonably sided with the abuse of persons so effected in nearly all cases, despite vast evidence of wrongdoing by its officers, including Plaintiffs herein.

163.    Defendant CITY OF NEW YORK and the NEW YORK CITY POLICE DEPARTMENT has repeatedly and continuously engaged in and/or allowed is police officers such as Defendants VIET W. CAO and CAPTAIN DANIEL SOSNOWIK to knowingly and willingly file false reports, false criminal complaints, false criminal allegations, and false charges against innocent individuals such as Plaintiff JOSEPH OQUENDO - with immunity.

164.    Upon information and belief, Defendant CAO routinely made false statements of criminal wrongdoing against others - including Plaintiff. Municipal Defendant CITY OF NEW YORK is aware of the fact that its police officers (such as Defendant CAO and SOSNOWIK herein) routinely and regularly makes false statements of criminal wrongdoing against innocent persons.

165.    Municipal Defendant CITY OF NEW YORK is aware that its police officers (such as Defendant CAO) continues in their pattern and practice of making such false statements against innocent persons because said employees are routinely allowed to do so and will receive full

27

protection, immunity, and indemnity from the CITY.

166.    Municipal Defendant CITY OF NEW YORK is aware that further training, supervision, and/or discipline of its officers would correct the ongoing problem, but intentionally fails to adhere to, or implement, any such training or supervision policy and seldom investigates or disciplines officers implicated in such malicious acts against individuals.

167.    Upon information and belief, Defendant CITY OF NEW YORK and the New York City Police Department knew and/or should have known, that Defendant CAO made false statements of criminal wrongdoing against others - including Plaintiff - while acting within his official duties and under color of law as a police officer with the New York City Police Department.

168.    Upon information and belief multiple complaints regarding misconduct were made against Defendant CAO by civilians within the areas that he patrolled.

169.    Upon information and belief, despite their knowledge of Defendant CAO's history, the Defendant CITY OF NEW YORK and the New York City Police Department failed to discipline, supervise, train, and/or retrain Defendant CAO with respect to his continued wrongful conduct.

170.    Defendant CITY OF NEW YORK and the New York City Police Department ratified and/or condoned the actions of Sergeant Defendant CAO and allowed him to continue in his supervisory role within the NYPD despite his conduct.

171.    As a direct result of the CITY OF NEW YORK's and the NEW YORK CITY POLICE DEPARTMENT's policy, practice of allowing it Police officers, such as Defendant Officers herein to make false criminal complaints against innocent individuals, the CITY OF NEW YORK and the NEW YORK CITY POLICE DEPARTMENT has been subjected to many federal and state Complaints and lawsuits alleging that Police officers subject civilians to unlawful excessive force and then routinely file false reports against innocent persons in violation of section 1983.

172.    For examples of similar lawsuits filed against the CITY OF NEW YORK alleging

false arrest and malicious prosecution, see, *inter alia*: *Nicole Paultre Bell, et al. v. The City of New*

*York, et al.*, Case No. CV07 2994;   *Dexter M. Brown v. City of NY*, Case No. 7003/99; *Jerell*

*Chappell v. The City of New York*, Case No. 544/06; *Margarita Rosario  v. City N.Y.*, Case No.

25092/95; *John Holloway v. City of NY*, Case No. 12525/03; *Malcolm Ferguson v. City N.Y.*, Case

No. 18951/01; *Phyllis V. Clayburne v. City of New York*, Case No. 32987/04; *Salimata Sanfo v. New*

*York City Police Department*, Case No. 1760cv04; *Michael Zito v. City of New York*, Case No.

14732/99; *Raymond B. Murray v. City of New York*, Case No. 13644/96; *Franklyn Waldron v. City*

*of NY*, Case No. 25179/00; *Campos Vs. City of New York*, Index No. 108667-96; *Regina Garcia, v.*

*Michael O'Keefe, et al.*, Case No. 116492/93; *Darryl Barnes v. City of New York*, Case No.

23752/91; *Thomas Cusanelli  v. New York City Transit Authority*, Case No. 121242/95; *Christopher*

*Nevin v. City of New York*, Case No. 17962/92; *Jason Rodriguez v. City of New York*, Case No.

17422/96; *Hector and Angelo Garcia v. City of New York*, Case No. 14647/92; *Alberto Castro v.*

*City of New York*, Case No. 119140/93; *Darryl Barnes v. City of New York*, Case No. 23752/91;

*Argenio vs. City of New York, et al.*, Index No. 117269/94; *Elsie Diaz v. City of New York*, Case No.

17731/85; *Regina Argenio v. City of New York*, Case No. 117269/94; *Bastion vs. City of New York*,

Index No. 013735/90; *Beebe Vs. City of New York*, Index No. 3248/92; *Papa v. City of New York*,

No. 15695/86**,** *James Crockett v. City of New York*, 11-CV-4378, to name just a few cases.

173.    Additionally, the CITY OF NEW YORK has systematically failed to identify

the improper abuse, misuse, violative acts and brutality by police officers and officials, while further

failing to subject such officers and officials to discipline, closer supervision or restraint. The CITY's

continual refusal to train, supervise, instruct, discipline, and assure that the repeated abuses of it

police officers (including writing true and accurate reports, perjury, falsely charging individuals,

establishing probable cause, and proper arrest procedures) was properly addressed constituted deliberate indifference to the rights, safety, and dignities secured by the public at large (including Plaintiff herein).   As a direct result its police officers continually write false reports, perjure themselves, falsely charge innocent persons and/or trump-up charges, and arrest without probable cause.

.     174.    Upon information and belief, specific systemic flaws in the CITY OF NEW YORK'S supervision of its law enforcement agents and subsequent misconduct review process include but are not limited to the following:

a.  Preparing reports regarding investigations of unwarranted incidents as routine point-by-point justification of the police officers actions regardless of whether such actions are justified;

b.  Police officers investigating unwarranted incidents systematically fail to credit testimony by non-police officer witnesses and uncritically rely on reports by police officers involved in the incident;

c.  Police officers investigating unwarranted incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;

d.  Supervisory police officers exonerate police officers for misconduct and abuse of process before the investigation of the incident by the police department has been completed;

e.  Failing to reprimand, retrain, supervise, counsel, demote, suspend, terminate, and/or hold accountable it police officers accused of excessive force

f.  hastily accepting the polices' above- as provided information from police reports regarding abuses and civil rights infringements, despite strong evidence to suggest that the police reports are inaccurate, untruthful, and meant to conceal blatant police misconduct.

g.  advising its law enforcement officers to level criminal charges against persons involved, no matter if said charges are justified, in order to force said civilian to engage in plea negotiations and/or plea offers which would effectively prevent false arrest and malicious prosecution charges from going forward against the City Of New York and allowing said false criminal charges to continue despite overwhelming

evidence that the criminal charges lack basis;

175.    Said cover-up by the defendant, CITY OF NEW YORK, was executed in this case, where the Defendant CITY, its agents, employees and servants failed to sufficiently investigate the truthfulness and accuracy of the Defendant Sgt CAO's statements and instead acted under color of statute to knowingly, recklessly and/or  negligently impose false criminal charges upon the Plaintiff JOSEPH OQUENDO.

176.    By permitting and assisting such a pattern of police misconduct, the Defendant, CITY OF NEW YORK acted under color of custom and policy to condone, encourage and promote the deprivation of Plaintiffs' Fourth, Fifth and Fourteenth Amendment rights.

177.    As a consequence of the defendants' systemic practice, pattern, and custom of intentionally promoting and supporting officers' and official violations of 42 U.S.C. § 1983, Plaintiff was deprived of his freedom(s) and physically harmed, to the extent of which he suffered from loss of driving privileges, humiliation, loss of licenses to carry firearms, loss of title/rank/status, removal from his command, loss of liberty, stigmatization, lost pay and benefits, lost union responsibilities, unnecessary inpatient treatment, impound fees, loss of use of vehicle, labeling as a criminal Defendant, diminished quality of life, incidental fees/damages, loss of pay, loss benefits, special damages, economic damages, impound costs/fees, attorney's fees/costs, property damage, damage to his vehicle, and other damages/injuries.

178.    That by reason of the foregoing, Plaintiff has been damaged in the sum in excess of one million dollars ($1,000,000.00) - not including the cost of this action, attorneys fees pursuant *42 U.S.C.* §1988, and punitive damages.

**PRAYER FOR RELIEF**

Plaintiff requests judgment as follows:

a.     First Cause of Action: in excess of One million ($1,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

b.     Second Cause of Action: in excess of One  million ($1,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

c.     Attorney's fees and costs, pursuant to *42 U.S.C.* § 1988;

d.     An Order granting such other legal and equitable relief as the court deems just and proper.

<u>**PLAINTIFF DEMANDS A TRIAL BY JURY**</u>

Dated:  Hempstead, New York
        April 18, 2014

                            LAW OFFICES OF
                            FREDERICK K. BREWINGTON

              By:     _____**/S/**_____
                            FREDERICK K. BREWINGTON (FB5925)
                            GREGORY CALLISTE, JR. (GC8140)
                            *Attorneys for Plaintiff*
                            556 Peninsula Blvd.
                            Hempstead, New York  11550
                            (516) 489-6959